IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 17-cv-00080-RBJ

RODERICK I. FULLER,

    Plaintiff,

v.

OLD DOMINION FREIGHT LINE, INC., a Virginia corporation, as known, doing business or sometimes referred to as "Old Dominion,"

    Defendant.

---

## ORDER

---

This matter is before the Court on defendant Old Dominion Freight Line, Inc.'s ("OD") partial motion to dismiss plaintiff Roderick Fuller's breach of contract claim [ECF No. 18]. For the reasons below, the Court GRANTS that motion.

### I. FACTS

Plaintiff Roderick Fuller is a former truck driver for OD. Pl.'s First Am. Compl., ECF No. 17, at ¶¶5–6. He claims in this action that while employed by OD his coworkers and managers harassed, humiliated, and ultimately retaliated against him because of his race.[1] *See, e.g.*, *id.* at ¶17. This harassment included an incident in April of 2009 where Mr. Fuller's then-supervisor, Mr. Chris Silvas, allegedly pushed Mr. Fuller on a loading dock and directed a racial epithet towards him. *Id.* at ¶9.

Mr. Fuller alleges that shortly after this incident occurred he reported his supervisor to another manager, Mr. Alan Thorson. *Id.* Rather than believe Mr. Fuller, however, Mr. Thorson

---

[1] Mr. Fuller is African-American. ECF No. 17 at ¶9.

1

accused plaintiff of lying about what had transpired.  *Id.*  Allegedly because of the company's belief that Mr. Fuller lied about Mr. Silvas' conduct, OD fired Mr. Fuller shortly thereafter.  *Id.*

Mr. Fuller's hiatus from work did not last long.  Allegedly after learning that Mr. Fuller might file a claim against OD for racial discrimination, OD reached out to Mr. Fuller to offer him his job back.  *Id.* at ¶¶10–11.  As part of its overture, OD management, including Mr. Thorson, allegedly assured Mr. Fuller that the mistreatment he suffered while employed by OD would not continue should he return.  *See id.* at ¶14.  OD employees also allegedly told Mr. Fuller that he would be valued and treated as "family" if he came back and that the company promised to treat Mr. Fuller in "good faith" and "fairly" going forward.  *Id.*  Finally, OD also fired Mr. Silvas, Mr. Fuller's former manager, apparently in an attempt to further persuade Mr. Fuller that the company had changed its ways.  *Id.* at ¶¶12–14.

Mr. Fuller subsequently accepted OD's offer of reemployment.  *Id.* at ¶15.  However, for all of the company's supposed promises that it had changed, the racial harassment and humiliation Mr. Fuller earlier experienced allegedly continued.  *See, e.g.*, *id.* at 16.  For instance, Mr. Fuller alleges that after returning to work several OD employees openly expressed their opinion that Mr. Fuller had "played the race card" to get himself re-hired and their friend, Mr. Silvas, fired.  *See id.* at ¶13.  Mr. Fuller's new managers at OD also allegedly continued to harass him by, for example, altering aspects of his employment such as by cutting his driving runs.  *Id.* at ¶17.  Mr. Fuller claims he complained to management about this treatment in 2014–15.  *Id.*  His complaints, however, allegedly fell on deaf ears.  *See id.*

Thereafter, Mr. Fuller alleges that he continued to experience harassment until OD fired him in late April 2016 because of supposedly minor damage to the mud flaps on his truck.  *See id.* at ¶¶51–57.  It appears that defendant will argue that it fired Mr. Fuller for being involved in

2

an accident (damaging his truck's mud flaps) that he subsequently failed to report. *See id.* at ¶¶ 61–64, 74–75.

## Procedural History

After he was fired Mr. Fuller brought suit against OD in Denver District Court on December 7, 2016. ECF No. 1-1 (state court pleadings). In his initial complaint, Mr. Fuller alleged two claims for relief. *Id.* First, a claim for breach of contract stemming from the statements OD employees allegedly made to him in 2009 that he would be treated "fairly" and "in good faith" if he returned to work—alleged "promises" that he claims were reiterated in several of OD's company employment documents.[2] *Id.* at 8–14 (¶¶42–80). Second, he brought a claim for racial discrimination under the Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-301, *et seq. Id.* at 14–17 (¶¶81–103).

On January 10, 2017 OD removed Mr. Fuller's lawsuit to this Court. Notice of Removal, ECF No. 1. Plaintiff subsequently amended his complaint on March 22, 2017. ECF No. 17. In his amended complaint plaintiff continues to assert the same two claims for relief. *Id.* Roughly two weeks after plaintiff amended his complaint OD filed a partial motion to dismiss plaintiff's first claim for breach of contract. ECF No. 18. That motion is ripe for review and currently the only motion pending before the Court with respect to this matter.

## II. STANDARD OF REVIEW

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

---

[2] These documents included a "Code of Business Conduct," bulletins posted around the workplace, and work "handbook" supplements. *See* ECF No. 17 at ¶15.

(2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002), conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

### III. ANALYSIS

OD's argument for dismissal is simple: OD employed Mr. Fuller "at-will," and the assurances Mr. Fuller alleges OD made to induce him to return to work are insufficiently definite to create an implied contract of employment between the parties. ECF No. 18 at 4–8. In response, Mr. Fuller appears to argue that his agreeing to return to work in April of 2009 established an employment contract with OD, and that the company's contemporaneous and subsequent assurances created a valid and enforceable express covenant of good faith and fair dealing.[3] ECF No. 27 at 6–14. Mr. Fuller goes on to contend that he has sufficiently alleged OD breached that covenant by firing him under the circumstances detailed above. *See, e.g.*, *id.* at 5. I see things the way OD does.

---

[3] Mr. Fuller also tries to save his claim by construing his self-described breach of contract claim as one for promissory estoppel. ECF No. 27 at 2, 15. Mr. Fuller, however, does not appear to have alleged a claim for promissory estoppel in his amended complaint. Even if he did, such a claim would similarly be dismissed because the assurances OD allegedly made to Mr. Fuller to induce him to return to work either constitute vague promises that no reasonable person would rely on or amount to illusory and therefore unenforceable promises to "follow the law" (i.e., Title VII). *See Haynes v. Level 3 Commc'ns, LLC.*, 167 F. App'x 712, 715 (10th Cir. 2006) (unpublished) (recognizing that "[a]ssurances of fair treatment or mere vague assurances are unenforceable" in the context of promissory estoppel claims under Colorado law) (internal quotation marks and citations omitted); *Evans v. Maytag Aircraft Corp.*, 16-CV-02264-RBJ, 2017 WL 1437296, at *6 (D. Colo. Mar. 14, 2017) ("[A]ny promise by an employer to 'follow the law' is illusory and unenforceable.").

4

From Mr. Fuller's amended complaint, it is clear that Mr. Fuller and OD did not have a formal employment contract. Instead, Mr. Fuller was "hired . . . for an indefinite period of time" which, under Colorado law, creates a presumption that he was an "at will employee, whose employment may be terminated by either party without cause and without notice . . . ." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987) (internal quotation marks and citations omitted).

But, as defendant acknowledges, that is not the end of the story. One way Mr. Fuller could overcome that presumption and sustain a claim for breach of contract based on his firing is by establishing that OD created and subsequently breached an implied employment contract. *See, e.g.*, *Orback v. Hewlett-Packard Co.*, 909 F. Supp. 804, 808 (D. Colo. 1995), *aff'd*, 97 F.3d 429 (10th Cir. 1996) ("An employer may be held liable for the discharge of an otherwise at-will employee, however, where an implied contract arises out of company policy or employment manuals[.]"). To do so, Mr. Fuller must sufficiently allege that OD made assurances or promises to him that it intended to carry out, that he accepted, and that, importantly, could subsequently be enforced. *See id.*

Typically, whether an employer's promises and assurances rise to the level of an implied contract is a question of fact reserved for the jury. *Id.* (citing *Tuttle v. ANR Freight Sys., Inc.*, 797 P.2d 825, 828 (Colo. App. 1990)). Nevertheless, this issue may be decided "as a matter of law" and a breach of contract claim subsequently dismissed if the alleged statements by an employer are deemed unenforceable because they constitute "nothing more than vague assurances[.]" *See Dupree v. United Parcel Serv., Inc.*, 956 F.2d 219, 222 (10th Cir. 1992) (finding that statements in company documents to the effect of "We Treat Our People Fairly and Without Favoritism" and that a company wishes to build a cohesive and working "partnership"

5

were too vague to constitute enforceable promises of future job security and therefore insufficient to form an implied contract).

Such is the case here. Mr. Fuller alleges that OD made the following assurances to him to induce him to return to work: (1) "that it would be trustworthy in its dealings with him;" (2) "that it would treat him in good faith and fairly;" (3) "that it would honor and respect his integrity and dignity;" (4) "that it would recognize him as an important and valuable asset;" (5) "that it would communicate openly and honestly with him; and" (6) "that it would behave ethically toward its him and 'conduct its business affairs to the highest business conduct and ethical standards possible.'" ECF No. 17 at ¶44.

Assuming OD actually made these statements as I must at this stage of the litigation, these statements merely constitute vague and indefinite assurances. As such, they are unenforceable and insufficient to create an implied contract under Colorado law. *See, e.g.*, *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465 (10th Cir. 1994) ("Defendant's Credo merely includes general statements to the effect that it is committed to 'the dignity and privacy due all human beings' and providing 'a safe and healthy workplace.' Likewise, Defendant's equal opportunity memorandum merely states the company's general commitment to affirmative action. Statements such as these are merely 'vague assurances,' . . . and too indefinite to constitute a contractual offer which would enable a court to determine whether a contract has been performed."); *Hoyt v. Target Stores, Div. of Dayton Hudson Corp.*, 981 P.2d 188, 194 (Colo. App. 1998) ("Because a vague assurance of fair and consistent treatment cannot form the basis of an express covenant of good faith and fair dealing, and the statement here [(i.e., that Target

would treat its employees "fairly and in a consistent manner")] constituted such a vague assurance, we conclude as a matter of law that there was no underlying contract.").

Mr. Fuller cannot therefore pursue a breach of contract claim arising out of his termination because he was, at all times, an "at-will" employee of OD. *See Cont'l Air Lines, Inc.*, 731 P.2d at 711("An employee who is hired in Colorado for an indefinite period of time is an 'at will employee,' . . . whose termination does not give rise to a cause of action.").

What's more, even adopting Mr. Fuller's view of things that his breach of contract claim is really one for breach of an express covenant of good faith and fair dealing, dismissal would still be proper. A breach of express covenant claim, after all, is a contract claim. *See Lutfi v. Brighton Cmty. Hosp. Ass'n*, 40 P.3d 51, 59 (Colo. App. 2001) ("If a claim based on the violation of an express covenant of good faith is to be recognized, such a claim is a contractual one.").

Thus, in order to bring such a cause of action, Mr. Fuller must sufficiently allege the existence of an underlying contract to which these covenants could even apply. *See Decker v. Browning-Ferris Indus. of Colo., Inc.*, 931 P.2d 436, 443 (Colo. 1997) (recognizing that "parties to a contract may *as a part of their agreement* enter into an express covenant of good faith and fair dealing") (emphasis added); *Hoyt*, 981 P.2d at 193 (pointing out the lower court followed such a requirement); *see also Meeker v. Life Care Ctrs of Am., Inc.*, 14-CV-02101-WYD-NYW, 2015 WL 5728787, at *2 (D. Colo. Sept. 30, 2015) (explaining that vague assurances like those here "do not rise to the level of a contract *or support a claim for breach of the covenant of good faith and fair dealing*.") (emphasis added).

7

As explained above, Mr. Fuller has not alleged that the parties had an express contract. Nor do I find that one can be implied from the vague assurances OD allegedly made to him to induce him to return to work. *See supra.* Accordingly, OD's partial motion to dismiss Mr. Fuller's breach of contract claim is GRANTED.

**ORDER**

For the reasons above, the Court GRANTS defendant's partial motion to dismiss [ECF No. 18]. Plaintiff's breach of contract claim is therefore dismissed with prejudice. The hearing on this motion scheduled for August 22, 2017 at 10:00am is also VACATED.

DATED this 12th day of June, 2017.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge